Good morning, Justices. May it please the Court, counsel. I'm going to try to be even Before I underscore the points of error that the plaintiff contends Judge Mulhern committed, I want to call one on myself, about which I was at least consistent. I think in all the papers I filed, for the short time I was a record in the trial court, and here I refer to the provision of the code that allows for leave to amend pleadings as 2-606-616. I apologize for the oversight, but the attorney body is their court. Judge Mulhern's ruling dismissing Perk 619A4, plaintiff's complaint, was based on res judicata and res judicata alone. She said as much in the report of the proceedings that's now part of the record when she denied the motion to modify the dismissal order on 10 July 2009. Much earlier in the underlying class litigation, Judge Mason, for whom my client had become a fly in the ointment to be sure, in disposing of his motion to adjudicate an attorney's land, made as clear as anything in the record in this case can make clear, that the parties as to whom this fee allocation issue involved were different parties than the parties as to whom Judge Mason was determining a class counsel fee. In disposing of Langone's motion to adjudicate a land, she made a distinction on the record between the parties related to class counsel's fees being, as it related to the attorney's land claim, the defendants in that case were all McAbee's insurance on the one hand, and the class of plaintiffs on the other. And the class counsel as a collective, and that included, and still does include, Christopher Langone, were not part of that question, and therefore she denied his motion to adjudicate the attorney's land, that he tried to assert in that matter. She didn't deny his motion to adjudicate it, she said he had none. Well, that was the finding that she made prefatory to denying the motion. She actually did ultimately deny the motion. Did she find that he had no lien? That's correct. Okay. And she so found, because she found that because the relationships were different, he didn't have any lien to assert against the fees that she was awarding class counsel in the underlying matter. I'm sorry, counsel, but didn't she say that the Attorney's Lien Act did not allow the attorney to go against the other attorney? It was the class. It had to be the client that had a claim against the other lawyers, not one of the counsel. Just before I stepped up, I flagged this particular. I think it's important to be very precise about what Judge Mason did and did not do. I agree with that, and I want to, referring now to the records of proceedings on 15 July 2008, at page 18 of that record, where Judge Mason recites that she's denying the motion to adjudicate the attorney's lien, based on the finding that he didn't have one. And on the previous page, precisely what Judge Mason said was, now the Lengler firm is on a petition to adjudicate an attorney's lien, not against the settlement fund, and not against Royal McAbee's, recognizing the fact that a different party in interest still was class counsel, and this lump sum fee that she awarded to class counsel. So he had no right to a lien. Why isn't it raised in the court? Based on not only what he raised, but what he could have raised. Judge, it's not raised judicata because whether he had a lien or not. It's not raised judicata. Raised judicata is the claim raised or claims that could have been raised. Could he have raised that claim at that time? No, Justice Hoffman, and Judge Mason said as much over and over and over in the record. She said she wasn't going to hear the claim that Langone asserts here in this lawsuit, which is his entitlement to some portion of the lump sum fee that she awarded to class counsel in the aggregate. There's no question that as of that date, Langone, by virtue of the courts, was Judge Nowicki's 2000 order of certifying class. Langone was part of the group composing class counsel. And there's no question that to the present day, in fact, the defendant's brief here confirms that. Can I just interrupt you for one second? Yes. Are you saying that the judge made a ruling that it was raised judicata based upon the attorney's lien and not based upon the decision that was made earlier that fees would be given to the class, to the counsels who gave their records of time spent, and that your client did not give them? I think that was the basis of the raised judicata, not the attorney's lien. Judge, the record of that proceeding doesn't make that explicit. There's no question that one basis for Judge Mulhern's dismissal of the complaint, in this case on the raised judicata basis, was Langone's failure to submit the claim in the underlying matter. And her conclusion that we contend was error, that that precluded for all time Langone from making a claim against the defendants in this lawsuit. Well, that's exactly what I'm saying. The position was that because he did not submit his timesheet when the class counsel's fees were awarded, that that was therefore raised judicata because a determination was made at that time as to class counsel's fees, whoever submitted their fees. She said there was going to be one and one award of fees only, and people had to, as a condition proceeding, submit their timesheets. She did say that, but she never went further. That is, I'm now talking about Judge Mason and her decision respecting the fieldwork. She never did say, in so many words or otherwise, Langone, if you don't submit your time, you're out. You don't get to share in this fee that I am awarding to all of class counsel. Didn't she say, your work is not included in the fee that I'm awarding? She did say that, or was, to that effect. Not his work, his time. His time, right. And they may be distinct. And what can be taken from those words is that if Langone had submitted time to her... She would have included it in her calculations and in the lodestar, but he didn't. She may have awarded class counsel as a group more in attorney's fees than without his lodestar. And I hate to bounce back and forth, but I think this is an important time to make this point. One of the critical facts that was included in the proposed amendment to the complaint that Judge Mulholland dismissed in this case, which would have been like the original complaint, the verified complaint, was that Langone did submit his time in the underlying class action. He filed his time with the unsuccessful motion to adjudicate an attorney's lawyer. What he didn't do was deliver the same materials evidently to Judge Mason's chambers for her separate review in conjunction with the lodestar question. But Judge Mason said over and over in different parts of the record on different occasions, and in the footnote in her order, that she was explicitly avoiding the question of the sharing of the lump sum fee awarded to all class counsel among those class counsel. She went so far in one of the proceedings as to tell Langone that the place for him to resolve that issue of allocation of the lump sum fee was in an action in the law division, which gave rise to this lawsuit. So res judicata doesn't apply here, and was it eroded? Because of what she said, it doesn't apply. Did your client ever file a petition to be awarded fees in the class action? Yes, Judge, he did, and the verified complaint says as much. He filed a motion in which he contended that class counsel, as a collective group, should receive 10% of the total class action. He said they should receive 10% instead of a third, 28% or whatever they got. He didn't file a petition for fees. And he didn't submit any? In the underlying class action, he filed a pleading in which he asked the court to award a fee to all class counsel of 10%. He filed a petition to adjudicate a lien. Did she deny that petition to award all class counsel 10%? She overruled the objection. Okay, so why didn't she appeal it? In fact, the final order, as Langone sees this world, was entered just this past October when Judge Mason finally distributed the order. Why do you say that was the final appeal of the order? Our view is that, our contention is that it is and was the final appeal of the order. Why do you say that? Because she retained jurisdiction over this matter up until the date of her Cy Prey award of the balance of undistributed settlement proceeds. And for whatever it was worth, Langone has filed a notice of appeal of the underlying class actions, objections, and the question of his allocation. She's had parcel of the three appeals that were dismissed for want of prosecution? No. That's something different? Yes. Because he filed three appeals that were consolidated or dismissed for want of prosecution from March the 12th of 2009. I understand that, and I think that's addressed in the reply brief filed here. I would just finish here by saying that the question of the allocation of the lump sum fee awarded to all class counsel. He's saying awarded to all class counsel, but when the judge awarded it, didn't the judge say the Childress firm, the Shad firm, and the Madonna firm? She indicated that those were the firms whose time and billing she had considered in her lodestar evaluation of the petition. She did not say that Langone was excluded from any allocation of that lump sum amount. In fact, she said over and over, and she said in that proceeding, that that was of no moment to her at that time. I have nothing further. Thank you. Can I ask you one other question? Yes. On June the 15th, July the 15th, 2008, did the judge end her colloquy by saying, I am going to get to this order. This is a final and appealable order because the only thing remaining from the jurisdiction I retained over the administration of the settlement was the issue, and I have resolved it. She did. Is that a 304A finding? We contend that it is not. Why not? It does not include the language contained in the rule that there is no just reason to deny or delay enforcement of an appeal from the government. Yes, sir. Okay. Thank you. Good morning, Justices. My name is David Ginelli, and I am here for the Shad Diamond Shaddy firm. Counsel for Michael Childress of the Duffy firm is here as well. We've agreed that for efficiency purposes that I will do the argument today. I think the court well understands the issue in this case. It's one that Mr. Langone cannot get over. He was supposed to file a fee petition, and he didn't. Not in February of 2008 when Judge Mason said to his lawyer at that time, I want a fee petition from you if you're going to share in the fees, and I give you seven days. Meaning by February 26, 2008, he was supposed to file a fee petition that included his time records. He never did. The court is well aware because the brief states that the fact of the matter is that if you look at the transcript of the April 4th fairness hearing on the class settlement at which attorney's fees were awarded, Mr. Langone showed up, and Judge Mason reminded him again what it is he didn't do. She said in April of 2008, you were supposed to submit your time records and file a fee petition, and you didn't do it. Don't be silly, Mr. Langone. You knew very well you were supposed to do it, and your counsel knew it too, and you didn't do it. And as a result, the award of attorney's fees at that time was made to three firms. It could not be more explicit from the record that that is what, in fact, Judge Mason did. She awarded it to the Shad Diamond and Shadid firm. She awarded it to the Madonia firm, and she awarded it to the Childress firm. And when Mr. Langone objected and said, I'm class counsel too, what did Judge Mason say? She said, you didn't file a fee petition, and so therefore, my calculations as to what the fee should be does not include your firm. It includes no time for your firm because you didn't file a fee petition. Now, that is an incontrovertible fact. You heard Mr. Adams indicate, well, yeah, I think he did file a fee petition. I think he did give the records, and I sort of made that an amended complaint. Well, that's poppycock, Justices. The fact is that if you look at the transcript of the April 4th hearing, Mr. Langone says, well, I have the records now, Your Honor. I give them to you now. And she said, it's too late. I don't want them. I've done all this work and looked at all these records, and it's too late. So that's what Mr. Adams is referring to. It's too late. Now, why is all this important? Well, it's important because the court needs to understand what is actually in front of the court today in terms of an appeal. The only thing that's in front of the court is this motion for reconsideration that, in fact, Mr. Langone filed after the circuit court had dismissed his complaint regarding a breach of contract. He makes and spends a lot of time in his brief arguing that somehow this was an abuse of discretion and that he should have been allowed to amend his complaint and he should have been allowed to argue breach of contract and want to narrow it against the Shad firm, against the Childress firm in six different towns. None of that, even if this were somehow in front of the court, would have changed the only fact that this court needs to know in this appeal, which is he was required, invited, cajoled indeed, to file a fee petition to get paid, and he didn't do it. This gets more basic. The question becomes, was the July 15th of 2008 order, the final order, for purposes of reissue of cash? It was. Why? It was because, in fact, the court said that this is a final order as far as I'm concerned. His argument is because the court left out and there was no just reason to delay enforcement or appeal. That's not a 304A finding, and therefore the order remained interlocutory. It remained interlocutory until disposed of. Well, the fact is that the court certainly intended a final order. Everybody knew it was a final order in regards to that. I don't believe that the magic language has to be in there if, in fact, the intent is otherwise. Actually, the magic language has to be in the written order. What the language says in the order is that it is a final order in regards to it, but this court doesn't need to get there. Well, it can't be raised to the count if it isn't. The court doesn't need to get there. Now, let me tell you why, Justice Hoffman. Because what the lower court did was to, in fact, deny the motion for reconsideration. Again, that's the only thing that's up here on appeal. Now, what was argued in regards to the dismissal of the complaint? Both affirmative matter, which is the subsection 9 of 2619, and res judicata, which is subsection 4. This court can affirm the lower court, if there is any basis at all, for the decision of the court. Here, we're back to, did you file a fee petition? Because the fact of the matter is the affirmative matter that was argued on the subsection 9 hearing was that, in fact, a condition precedent to his breach of contract claim had not been met, which is, in order to get paid, you need to file a fee petition. And if you don't, your breach of contract claim, you can argue all you want that somehow somebody didn't pay you or you should have been paid, but if you didn't do what you needed to do in order to be included, then that's affirmative matter that says your complaint for breach of contract is gone. It made no difference at all. The res judicata argument doesn't even need to be considered by the court. If the court were to say, well, maybe this wasn't a final order below, so we have the proper elements of res judicata, you don't even have to consider that. You just have to consider whether there was a basis for the lower court to have ruled that the complaint should be dismissed, and the court was had in front of it both the subsection 4 and the subsection 9 arguments. The breach fully argued both points. The subsection 9 argument cannot be defeated under any set of circumstances, even if, for sake of argument, the court were to say, well, maybe this wasn't a final order on the subsection 4 res judicata argument. And, again, it's sort of ironic, isn't it, justices, because the reason it can't be defeated is because of plain, uncontroverted fact. You didn't file a fee petition. You weren't included in the fees. Therefore, your breach of contract claim is over in regards to it. And that's really all that the court needs to look at. This is a very simple case in respect to that, and it is also a very just decision. If someone decides for whatever the reason, and I'm not going to sit here and impugn what Mr. Langone's reasons were for tactically deciding not to file a fee petition. There are all sorts of speculative issues that could be raised. You don't need to consider any of it. All you need to consider is the fact. What is the fact? It's uncontroverted. He didn't file it. Since he didn't file it, he had no breach of contract claim. Since he had no breach of contract claim, the lower court was certainly within her right to dismiss his complaint for breach of contract and to say on the motion for reconsideration, which is the only thing before the court now, you know, you didn't show me anything as to why it is I should change my ruling. And as a consequence, given that fact, there is no basis to say that the lower court should have been reversed in any way, shape, or form in regards to this. Everything else is static in this case, justices. Everything else is static. So as a consequence, when the court looks at this case, look at this fact. Look at the fact. He didn't file a fee petition. He was invited to do so. He didn't do it. He didn't file his records. As a result, he has no right now to come in and say, you guys did the right thing, but I should share in that. My time won't be looked at by anybody. You should give me part of what you got. And then he has the gall to start talking about how well their fees were reduced by the court. Yeah, they were reduced by the court because they gave the court all the information the court wanted. The court made its decision for three firms. Now Langone comes in the back door and says, well, I never submitted my records. Nobody ever looked at my records, whether they're good, they're bad, or otherwise. You give me part of what you got, and I'll take it that way. That's not a just result. That's not why you justices are here. And it's not why we, looking at this case, should do anything other than affirm it. Thank you. Reuben? Could you tell me what the pages in the record were on finding written order from July the 15th to 28th? It is. I can't find it. I'm sorry. Justice Hoffman, I believe that it was found with part of the supplement of record materials. I don't have the page set. I will say in a little time I have left, in reviewing the transcript of the 15th of July 2008 proceeding, Judge Mason, after making clear her frustration with my client, justifiable for some reasons that are apparent, she makes clear twice that she isn't going to get involved in the question. She isn't going to decide as if we contend. The question is not before her, this allocation of the fee award among and between class counsel. The significance, particularly now, of the second basis for our appeal, that is, in the motion to modify Judge Mulholland's order dismissing this case with prejudice, she would not strike the with prejudice language so that we could then go back to Judge Ward and get a hearing on our 616 motion for leave to amend, is that the amended complaint that Langone intended to file, a verified amended complaint, did allege that he had provided Judge Mason with this time and billing records in conjunction with pleadings that he had filed in the McAbee's litigation. And that then would have been a fact that Judge Mulholland would have had to accept as true for purposes of, or Judge Ward, or whoever succeeds him, would have to take into account in deciding subsequent motions directed to pleadings. And for the reasons expressed in our briefs here today. Whoever had the idea that she had to take the with prejudice language out in order to file a motion, even post-judgment motion, to file an amended complaint, where did that idea come from? That came from Judge Ward. In the chronology here, after Judge Mulholland's dismissal order was entered, we presented a motion to Judge Ward to strike the with prejudice language from the early years. What does that have to do with it? And for leave to amend the pleading. And Judge Ward explicitly ordered, in written orders that are part of this record, that he was unwilling to rule on our motion for leave to amend until we had first gotten a ruling from Judge Mulholland on the motion to modify the order with respect to the with prejudice language. But Judge Ward didn't say you had to file a motion to strike that language. That came from your client, not from the judge. Well, the motion that we filed after Judge Mulholland dismissed the case was a motion to modify the dismissal order. I understand that, but you just said it was Judge Ward's decision and it wasn't Judge Ward who said for you to file that. You decided to file. Oh, absolutely, absolutely. And Judge Ward insisted that Judge Mulholland first have an opportunity to rule on the motion to modify before he would even consider the motion for leave to amend. And it's Langland's contention here that he should have got a hearing on his motion for leave to amend and that he should have given leave to amend. Thank you. The counsel will now be taken under advisement.